THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOUSEF M. BILBEISI,<br><br>                Plaintiff,<br><br>    v.<br><br>SAFEWAY INC.,<br><br>                Defendant. | CASE NO. C22-0876-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 28). Having thoroughly considered the parties' briefing and the relevant record, and having taken oral argument under advisement, the Court hereby GRANTS the motion for the reasons explained herein.

I.    **BACKGROUND**

This case arises from Plaintiff's employment with Defendant Safeway. Plaintiff started working for Defendant around July 2016. (Dkt. No. 29-3 at 3.) Plaintiff then failed to report to work on September 30, October 3, and October 4, 2018. (Dkt. Nos. 29-3 at 82–84, 128; 29-5 at 8–9.) Under Defendant's "Absentee and Tardiness" policy, "[a]ny employee who is absent for three consecutive days and fails to notify Management shall be presumed as having quit the job." (Dkt. No. 29-3 at 108.) According to Defendant's Human Resources representative, Plaintiff's employment was terminated because of these unexcused absences. (Dkt. No. 29-5 at 9.) On

1  October 9, 2018, Plaintiff brought a doctor's note to support the absences. (Dkt. Nos. 29-5 at 9;
2  29-3 at 90–91, 129–32.) According to Plaintiff, he also came to the store and told two other
3  employees that he was sick. (Dkt. No. 29-3 at 86–88, 92–93.) Plaintiff also received eleven
4  Corrective Action Notices ("CANs") during the course of his employment. (Dkt. No. 29-3 at
5  117–28.) These notices document instances of tardiness, failure to perform job tasks, and
6  confrontations with coworkers. (*Id.*)

7  Prior to his termination, Plaintiff alleges that he requested religious accommodations
8  during Ramadan but was denied. (Dkt. No. 1-1 at 3–4.) However, there is no record of any
9  request for accommodations. (Dkt. Nos. 29-3 at 106; 29-4 at 21, 29-5 at 14.) Plaintiff was
10 permitted to attend mosque during Ramadan. (Dkt. No. 29-3 at 60–61.) He also received
11 assistance from coworkers to avoid handling alcohol, per his request. (*Id.* at 64–68.) Although,
12 he did have to handle alcohol on occasion during Ramadan when his coworkers were
13 unavailable. (*Id.* at 67.) That being said, none of Plaintiff's coworkers could recall an instance
14 where Plaintiff was forced to handle alcohol. (Dkt. Nos. 29-4 at 21–22; 29-8 at 14; 29-6 at 15–
15 16.)

16 Following his termination, Plaintiff filed the instant suit in state court, alleging Defendant
17 took adverse action against him because of his race and/or religion. (Dkt. No. 1-1.) Defendant
18 removed the case based on diversity jurisdiction.[1] (Dkt. No. 1.) Defendant now moves for
19 summary judgment. (Dkt. No. 28.) Plaintiff opposes.[2] (Dkt. No. 32.)

---

[1] The Court previously remanded the case after Plaintiff asserted that he would add a diversity-destroying defendant. However, Plaintiff failed to do so, and the case was then removed again. The Court outlined the full procedural history to this point in a previous order, and will not repeat it here. (*See* Dkt. No. 17.)

[2] Although Plaintiff's response brief was untimely, the Court granted Plaintiff's motion for relief from the deadline. (Dkt. No. 48.) However, Plaintiff improperly raises additional substantive arguments in a surreplies and additional declarations and filings. (Dkt. Nos. 37, 38, 39, 40, 41.) The Court will not consider the additional substantive arguments made in those documents, as they should have been included in Plaintiff's response brief. *See* LCR 7(b)(2).

## II. DISCUSSION

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). A genuine issue cannot be found if the only evidence presented is "uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citations omitted).

### B. Disparate Treatment

First, Defendant argues Plaintiff fails to support his claim of disparate treatment based on his religion or race. (Dkt. No. 28 at 11–17.) Washington courts apply the *McDonnell Douglas/Burdine* burden shifting framework for disparate treatment cases under the Washington Law Against Discrimination ("WLAD").[3] *Hines v. Todd Pac. Shipyards Corp.*, 112 P.3d 522, 529 (Wash. Ct. App. 2005). Under that framework, Plaintiff must establish a *prima facie* case of wrongful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, he must establish that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citing *McDonnell Douglas Corp.*, 411 U.S. at 804).

---

[3] Plaintiff previously amended his complaint to include only state law claims. *Bilbeisi v. Safeway*, Case No. C20-0535-JCC, Dkt. No. 24 (W.D. Wash. 2020). Because this Court has subject matter jurisdiction under 28 U.S.C. § 1332, it applies Washington substantive law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

Here, Plaintiff fails to establish a *prima facie* case of discrimination. Although he shows that he is a member of a protected class and that he experienced an adverse employment action, he does not present evidence that he was treated differently than similarly situated individuals outside his protected class.[4] Plaintiff's only evidence in support is a statement by a former coworker, Michael Mugozi. (Dkt. No. 32 at 1–2) (citing Dkt. No. 33-2). However, Mr. Mugozi testified during a deposition that he never agreed to or signed a written statement. (Dkt. No. 29-8 at 11–14.) Defendant alleges this statement was fabricated by Plaintiff. (Dkt. No. 35 at 5.) Even if the Court were to accept the statement, it only generally states "[m]ore senior employees were not reprimanded to the same extent as [Plaintiff] for any infractions in store policy." (Dkt. No. 33-2 at 2.) This single, general statement is insufficient to support Plaintiff's claim that he was treated differently. Because Plaintiff fails to put forth evidence that he was treated differently, his claim for disparate impact fails.[5]

### C.     Failure to Accommodate Religious Practices

Next, Defendant argues Plaintiff's claim that he was denied a religious accommodation fails. (Dkt. No. 35 at 6–7.) To establish such a claim, Plaintiff must show that "(1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment." *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 203 (Wash. 2014) (citing cases).

Here, Plaintiff acknowledges he knew that Defendant has a religious accommodation

---

[4] Regarding the second prong, although Defendant presents evidence that Plaintiff received various write-ups for job-related behavior, nothing on the record indicates Plaintiff was unqualified to perform the job.

[5] Even if Plaintiff were to establish a *prima facie* case, the burden would shift to Defendant to articulate a legitimate, non discriminatory reason for its conduct. *Vazquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). Defendant has shown the reason for Plaintiff's CANs and termination were his behavior and violation of the absentee policy. The burden would then shift back to Plaintiff to show such reasons are "mere pretext," which he fails to do. *See McDonnell Douglas Co.*, 411 U.S. at 802–04.

policy, but never formally requested accommodations. (Dkt. Nos. 29-3 at 13, 106; 29-10 at 2.) And Defendant presents evidence that Plaintiff never made the request. (*See* Dkt. Nos. 29-4 at 21; 29-5 at 14.) Plaintiff again relies on Mr. Mugozi's declaration, which states "[i]t is to my knowledge and witness that [Plaintiff] was denied a reasonable accommodation for his religion." (Dkt. No. 33-2 at 2.) But this statement, from an employee who was not in charge of the accommodation process is insufficient alone to support Plaintiff's assertion that he requested an accommodation.

Accordingly, Plaintiff fails to establish a genuine issue of fact regarding informing his employer of a need for a religious accommodation. And, on this basis, his claim for failure to accommodate fails.

### D. Retaliation

Defendant argues Plaintiff presents no evidence to support his claim of retaliation. To establish a claim of retaliation under the WLAD, Plaintiff "must show (1) he engaged in a statutorily protected activity, (2) the employer took an adverse action against the employee, and (3) there is a causal connection between the employee's activity and the employer's adverse action." *Boyd v. State, et. al.*, 349 P.3d 864, 869 (Wash. Ct. App. 2015) (citing cases). Here, the adverse action against Plaintiff was his termination for missing three consecutive shifts. Because Plaintiff fails to provide evidence supporting his contention that he requested an accommodation, it is unclear what activity Defendant would be retaliating against. For this reason, Plaintiff fails to show any causal connection between his firing and any statutorily protected activity. Therefore, his claim for retaliation must also fail.

### E. Hostile Work Environment

Defendant next argues Plaintiff fails to provide sufficient evidence to establish genuine issues of fact regarding his claim of a hostile work environment. To establish such a claim, Plaintiff must show that harrassment "(1) was unwelcome, (2) was because he is a member of a protected class, (3) affected the terms and conditions of his employment, and (4) was imputable

to his employer." *Davis v. Fred's Appliance, Inc.*, 287 P.3d 51, 57 (Wash. Ct. App. 2012). Harrassment may be imputed to an employer if (a) the harasser is an owner, partner, corporate officer or manager, or (b) the harasser is the plaintiff's supervisor or co-worker and the employer knew or should have known about the harrassment and failed to take corrective action. *Id.* at 59.

Plaintiff alleges he faced harassment and a hostile work environment, based on various altercations he had with other employees. (Dkt. No. 1-1 at 4–6.) But he fails to provide evidence that any of these incidents occurred because of his status as a member of a protected class. At best, Plaintiff alleges one instance where a coworker stated "F*** your prayer" to him. (Dkt. No. 29-3 at 33.) But he provides no evidence beyond self-serving testimony that this occurred.[6] And even if he did present such evidence, Plaintiff fails to show that this was more than a one-off incident or that such conduct can be imputable to Defendant. *See Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) ("A hostile work environment, by its 'very nature involves repeated conduct'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).

Accordingly, Plaintiff's claim of a hostile work environment fails.

### F. Defamation

Finally, Defendant argues that Plaintiff cannot support his defamation claim. To do so, plaintiff must prove (1) a false statement, (2) an unprivileged communication, (3) fault, and (4) damages. *Herron v. KING Broad. Co.*, 776 P.2d 98, 101 (Wash. 1989). He must also show the statement at issue was published to someone other than himself. *Pate v. Tyee Motor Inn, Inc.*, 467 P.2d 301, 302 (Wash. 1970). And there is a qualified privilege for intracorporate communications, which are not "published" for purposes of defamation. *Doe v. Gonzaga Univ.*, 24 P.3d 390, 397 (Wash. 2001), *rev'd on other grounds*, 536 U.S. 273 (2002). This privilege may

---

[6] A genuine issue cannot be found if the only evidence presented is "uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citations omitted).

be lost, however, if Plaintiff can show the statement was made with actual malice. *Id.* at 398 (citing *Caruso v. Local Union No. 690*, 730 P.2d 1299, 1303 (Wash. 1987)). To prove actual malice, a party must establish the speaker knew the statement was false, or acted with a high degree of awareness of the statement's probable falsity. *Story v. Shelter Bay Co.*, 760 P.2d 368, 373 (Wash. 1988).

Plaintiff alleges that information contained in the CANs is false and harms his reputation. But as an initial matter, it is undisputed that the CANs are intracorporate communications created during the course of business and not available to non-employees. (Dkt. Nos. 28 at 23; 32 at 7.) Plaintiff states, without support, that actual malice "is clear and don't [sic] need to be proven, any reasonable jury can clearly see that defendant did act in actual malice . . . ." (Dkt. No. 32 at 7.) In the main CAN at issue, Plaintiff was written up for making numerous inappropriate comments including, "telling Danny he can't speak to him because he's gay." (Dkt. No. 33-3.) Plaintiff points to Danny Wilcox's deposition testimony, where he states "I don't remember that occurring at all, anything like that." (Dkt. No. 33-5 at 1.)

Labeling something as rooted in actual malice does not make it so. Defendant presents evidence that Renato Millo, who drafted the CAN, remembers Wilcox relaying the message. (Dkt. No. 33-4 at 1.) And Plaintiff's presented evidence, even if accepted as true, does not prove that Mr. Millo or any other employee of Defendant knew the statement was false or acted with reckless disregard to the truth. Rather, it appears Mr. Millo documented the information relayed to him at the time.

Because the communications at issue were intracorporate communications, and because Plaintiff fails to provide any evidence supporting actual malice, the defamation claim fails as a matter of law.[7]

---

[7] Even if Plaintiff could show actual malice, it is unclear what damages would arise from the publication of the CAN. He argues the information may damage his reputation, but it is unclear how a future employer would obtain the information. (Dkt. No. 32 at 8–9.)

## III.   CONCLUSION

Finding no genuine disputes as to any material facts, Defendant's motion for summary judgment (Dkt. No. 28) is GRANTED, and Plaintiff's claims are DISMISSED.

DATED this 7th day of June 2023.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE